IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIP KRILEY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 16-1860 |
| | ) |
| v. | ) Chief Magistrate Judge Maureen P. Kelly |
| | ) |
| IBM CORPORATION and IBM | ) |
| CORPORATION RESOURCE ACTION | ) |
| SEVERANCE PLAN, | ) Re: ECF No. 17 |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

**KELLY, Chief Magistrate Judge**

Phillip Kriley ("Kriley") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.*, challenging the denial of his claim for 26 weeks of severance benefits under the IBM Corporation Resource Action Severance Plan (the "Severance Plan"), administered by his former employer IBM Corporation ("IBM"). ECF No. 1-2. IBM and the Severance Plan (collectively, "Defendants") have filed a Motion for Judgment on the Pleadings ("the Motion"). ECF No. 17. For the reasons that follow, Defendants' Motion will be granted.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

Between 1990 and 2009, Kriley worked for Allegheny Technologies, Inc. ("ATI") as the manager of ATI's Tandem computer system. ECF No. 1-2 ¶ 7. In early 2009, ATI outsourced management of its computer resources to IBM. Id. ¶ 8. Kriley was deemed "critical to this transition," and agreed to join IBM "but only after IBM agreed to," among other things, "treat his service at ATI as IBM service to calculate his benefits. Id. ¶ 12. "IBM made these assurances

repeatedly[,]" id. ¶ 14, including at one of Kriley's first meetings with IBM's human resources transition manager, id., and during his "introduction to IBM," id. ¶ 16. "Based on IBM's repeated assurances . . . , Kriley accepted IBM's offer and began work in July 2009." Id. ¶ 17.

In March 2012, Kriley was permanently laid off, and IBM offered him five weeks' salary under the Severance Plan if he signed a release. Id. ¶¶ 19, 20. This offer was "based on Kriley's 2.5 years of IBM service and ignore[d] [IBM's] prior promise (and practice) of counting [his] 19 years of ATI service in calculating [his] IBM benefits." Id. ¶ 26.

Kriley claims that IBM never provided him with a copy of the Plan or Summary Plan Description ("SPD") explaining the terms of the Plan and the claims and appeals procedures. Id. ¶ 25. Nevertheless, on June 3, 2016, over four years after the termination of his employment, Kriley, through counsel, sent a letter to the Severance Plan, making a claim for 26 weeks' severance based on his combined years of service with ATI and IBM. Id. ¶ 29. On July 21, 2016, the Severance Plan denied his claim, on the grounds that (1) the appeal was "time barred because it arose after the plan closed[,]" and (2) "the Terms and Conditions of the contract which brought [him] from Allegheny to IBM did not allow for Allegheny service time to be used in calculating any separation payment." Ex. C, ECF No. 1-2 at 26. Kriley appealed, and the Severance Plan denied his appeal on October 14, 2016. Id.

On November 21, 2016, Kriley filed suit in the Court of Common Pleas of Allegheny County under 29 U.S.C. § 1132(a)(1)(B) seeking payment of the 26 weeks of pay he thought he was entitled to under his alleged agreement with IBM. Id. ¶ 1. Defendants removed the action to this Court based on federal question jurisdiction. ECF No. 1. On December 20, 2016, Defendants filed an Answer, ECF No. 6, which was followed two months later by their Motion for Judgment on the Pleadings, along with a brief in support, ECF Nos. 17, 18. Kriley filed a Response in

Opposition. ECF No. 19. Defendants filed a Reply, and Kriley filed a Sur-reply. ECF Nos. 20, 25. Having been fully briefed, the Motion is ripe for disposition.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) may be granted when "the movant clearly establishes that no material issue of fact remains to be resolved" and that it is "entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008); see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 259 n.25 (3d Cir. 2010). In ruling on the motion, the court must construe the facts in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. Id.; see also Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005). Generally, the court may "not consider matters outside the pleadings," Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 257 (3d Cir. 2004), though it may consider "exhibits attached to the complaint, matters of public record, and undisputed[ly] authentic documents if the plaintiff's claims are based upon those documents[,]" Perez v. Gamez, 2014 WL 670923, at *1 (M.D. Pa. Feb. 21, 2014) (citation omitted).

## III. DISCUSSION

### A. Scope of Documents Considered

As an initial matter, the Court must address the scope of the documents that it may consider in ruling on the instant Motion. When they filed their Reply, Defendants also filed a "statement" by Paul Horine, who was Kriley's supervisor at IBM. ECF No. 21. Attached to this statement are two e-mails between Horine and Kriley; the "Employee Package" (including a copy of the summary plan description ("SPD")) that was allegedly attached to one of the e-mails; and a chain of instant messages between Horine and Kriley sent around the same time. ECF Nos. 21-1 to 21-4. The e-mails and text messages shed light on the circumstances surrounding

3

Kriley's layoff and IBM's offer of five weeks' severance pay. Kriley argues in his Sur-reply that the Court must disregard Defendants' new evidence because the documents are outside of the scope of the pleadings. ECF No. 25 at 1-2. Kriley is correct.

With the exception of the SPD, which is also attached to the Complaint, the Court cannot consider these documents in ruling on Defendants' Motion, insofar as they are not attached to the Complaint, are not matters of public record, and do not form the basis of Kriley's Complaint. See Mele, 359 F.3d at 257. Accordingly, this new evidence will be disregarded by the Court.

B.     Section 1132(a)(1)(B) Claim

Defendants move for judgment on the pleadings on the basis that Kriley's claim under 29 U.S.C. § 1132(a)(1)(B) (the "non-fiduciary claim") is barred by the statute of limitations. ERISA does not include a statute of limitations for non-fiduciary claims. Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 n.2 (3d Cir. 2007). Instead, the statute of limitations is borrowed from the most analogous claim under the law of the forum state. Id. (quoting Romero v. Allstate Corp., 404 F.3d 212, 220 (3d Cir. 2005)). Here, the most analogous state law claim is one for breach of contract, see Gluck v. Unisys Corp., 960 F.2d 1168, 1181-82 (3d Cir. 1992), which is governed by a four-year statute of limitations, 42 PA. CONS. STAT. § 5525(8).

To determine whether the statute of limitations has run, the Court must first identify when Plaintiff's claim accrued – an inquiry that is "governed by federal law, irrespective of the source of the limitations period." Miller, 475 F.3d at 520. Under the federal version of the discovery rule, the "statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim." Id. In ERISA cases, courts have distilled the discovery rule "into the more specific 'clear repudiation' rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied." Id. (quoting Romero, 404 F.3d at

4

222). Under this rule, though, "a *formal* denial is not required" as long as "there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary." Id. (emphasis in original) (citing Romero, 404 F.3d at 222-23). "In other words, some 'event other than a denial of a claim' may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated." Id. (quoting Cotter v. E. Conf. of Teamsters Ret. Plan, 898 F.2d 424, 429 (4th Cir. 1990)). Thus, as with the general discovery rule, "it is a plaintiff's knowledge or ability to know of his or her injury that triggers the statute of limitations, not the plaintiff's knowledge that the injury violates his or her legal rights." Keen v. Lockheed Martin Corp., 486 F. Supp. 2d 481, 488 (E.D. Pa. 2007) (citations omitted).

In the instant case, Defendants argue that "Kriley's claim accrued no later than March 2012 when he was laid off and offered an allegedly incorrect severance payment." ECF No. 18 at 4. As such, Defendants assert that "Kriley's lawsuit, filed more than four and a half years later, is untimely, and should be dismissed." Id.

In opposing the Motion, Kriley responds that his cause of action did not accrue until October 14, 2016, when the Plan Administrator formally denied his appeal. "For an ERISA cause of action to accrue under the repudiation doctrine," Kriley argues, "there must be an act by a plan fiduciary (i.e. the plan administrator) that clearly adjudicates a participant's rights under the plan." ECF No. 19 at 5. Kriley contends that, "[t]he acts of [his] supervisor set forth in the Complaint do not satisfy either of these requirements." Id. For one thing, he says, although his "supervisors stated he could receive five (5) weeks of severance, the Complaint does not allege that his supervisors included the Manager, IBM North American Life Cycle Programs," whom the SPD identifies as the Plan Administer. Id. Moreover, "there was no 'clear repudiation' of [his] rights under the Plan before 2016" because, under the terms of the Plan, "oral statements

5

from [his] supervisors are not binding on IBM or the Plan" and cannot "constitute a declaration of his rights under the Plan." Id. at 6.

There are at least two problems with Kriley's argument. First, Kriley does not actually allege in the Complaint that "[his] supervisors stated he could receive five (5) weeks of severance," as he now claims. In fact, the word "supervisor" does not appear in the Complaint. Rather, in the Complaint, Kriley alleges that "*IBM* offered [him] five (5) weeks of salary under the Severance Plan provided [he] signed a release." ECF No. 1-2 ¶ 20 (emphasis added). He also pleads that "IBM is *Sponsor and Administrator of the Severance Plan*." ECF No. 1-2 ¶ 6 (emphasis added). His *post hoc* attempt to alter these allegations to try to avoid the effect of the repudiation rule will not be credited.

In any event, even if Kriley did only learn about the offer of five weeks of benefits from his supervisor, that would still be enough to trigger the statute of limitations under the clear repudiation rule. Despite what Kriley argues, "the clear repudiation rule does not *require* a formal denial . . . . To the contrary, the rule includes other forms of repudiation when a beneficiary knows or should know he has a cause of action." Miller, 475 F.3d at 521 (emphasis in original). A statement from Kriley's supervisor would have been enough to put him on notice that he was not entitled to 26 weeks of severance pay, as he thought he would be, regardless of whether it amounted to a "formal repudiation" by the fiduciary. See, e.g., McLafferty v. BASF Corp., 2014 WL 5369423, at *3 (S.D. Ohio Oct. 21, 2014) ("[T]he case law authority shows that no formal repudiation by the fiduciary committee was required, and the word from Defendant's agent was adequate to put Plaintiff on notice that his claim for benefits was being rejected."). This conclusion is consistent with "the underlying goals of statutes of limitations," which "are intended to encourage 'rapid resolution of disputes, repose for defendants, and avoidance of

litigation involving lost or distorted evidence.'" Miller, 475 F.3d at 522 (quoting Romero, 404 F.3d at 223). As the United States Court of Appeals for the Third Circuit has explained:

> These aims are served when the accrual date anchors the limitations period to a plaintiff's *reasonable discovery* of actionable harm. This ensures that evidence is preserved and claims are efficiently adjudicated. In contrast, a statute of limitations not based on reasonable discovery is effectively no limitation at all.

Id. (emphasis in original).

Thus, it is of no moment whether Kriley first learned from his supervisor that he would only receive five weeks of pay as severance instead of 26 weeks to which he thought he was entitled. What matters is that he knew that he had been harmed – i.e., that he would receive less in benefits that he thought he would. It was at that point, in March 2012, that he should have taken action to secure his legal rights. Because Kriley instead waited until November 2016 to file the instant lawsuit – approximately eight months after the statute of limitations had run in March 2016 – his claim is not timely.

Kriley offers two reasons why this action should nonetheless not be dismissed as untimely.[1] First, he contends that Defendants waived the statute of limitations defense by not raising it during the administrative process. Second, he argues that Defendants are estopped from asserting the limitations defense because IBM did not give him a copy of the SPD or a description of the claims procedure, as required by 29 U.S.C. § 1024(b)(1), which, he says, "left him clueless as to how, when and where to initiate a claim under the Plan." ECF No. 19 at 11. Neither of these arguments is convincing.

---

[1] Kriley also argues that this case should not be dismissed because he has also alleged a breach of fiduciary duty claim, which he claims should be governed by a six-year statute of limitations. This argument will be separately addressed below.

**1.     Waiver**

Courts addressing the waiver issue have held that "a defendant in an ERISA action may raise an affirmative statute of limitations defense even if it did not raise the defense during the administrative process." Paulus v. Isola USA Corp. Ret. Plan, 2014 WL 462367, at *5 (W.D. Wis. Feb. 5, 2014) (citing Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 520 (1st Cir. 2005); Upadhyay v. Aetna Life Ins. Co., 2014 WL 186709, at *2 (N.D. Cal. Jan. 16, 2014); Kunsman v. Conkright, 2013 WL 5631027, at *9 (W.D.N.Y. Oct. 16, 2013)); see also Upadhyay, 2014 WL 186709, at *2 ("Because the Court is not reaching the merits of Aetna's decision to deny benefits, Aetna's [sic] may raise these affirmative defenses even if they were not raised during the administrative process.").

Witt v. Metropolitan Life Insurance Co., 772 F.3d 1269 (11th Cir. 2014), is illustrative of this line of cases. Just as in this case, in Witt, the plaintiff argued that the defendant had waived its statute of limitations defense because it reviewed the plaintiff's untimely claim for benefits, did not mention the statute of limitations in its denial letter, and advised the plaintiff of his right to bring suit under ERISA if dissatisfied with the denial. Id. at 1279. The Eleventh Circuit was not persuaded, however, noting that the plaintiff had not cited any "ERISA case applying a waiver of a *statute-of-limitations defense*." Id. at 1280 (emphasis in original). "Rather," just as Kriley has done, the plaintiff in Witt cited cases that "involved a plan seeking to have its denial of a claim affirmed in court on a *contractual* requirement created by the Plan itself, which was not relied upon in the formal denial issued pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1." Id. (citing Reich v. Ladish Co. Inc., 306 F.3d 519, 524 n.1 (7th Cir. 2002); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688-89 (7th Cir. 1992); Haisley v. Sedgwick Claims Mgmt. Servs., Inc., 776 F. Supp. 2d 33, 53 (W.D. Pa. 2011)). As the Eleventh Circuit explained,

those cases (one of which, Haisley, Plaintiff relies on here) are distinguishable because:

> [t]he purpose of the requirements under § 1133 is to "enable the claimant to prepare adequately 'for any further administrative review, as well as appeal to the federal courts.'" Halpin, 962 F.2d at 689 (quoting Richardson v. Cent. States, Se. & Sw. Areas Pension Fund, 645 F.2d 660, 665 (8th Cir. 1981)). By contrast, a statute of limitations is a mechanism imposed by law allowing a defendant to rest assured that the claim is no longer subject to court action. See Lozano [v. Montoya Alvarez], 572 U.S. at ----, 134 S. Ct. [1224,] 1234 [(2014)]. As the Ninth Circuit has noted, "[w]hile the doctrine of waiver may be applied to prevent insurers from denying claims for one reason, then coming forward with several other reasons . . . , such an incentive is not needed when it comes to statutes of limitation defenses." Gordon [v. Deloitte & Touche, LLP Grp. Long Term Disability Plan,] 749 F.3d [746,] 753 [(9th Cir. 2014)] (quotations omitted).

Id. at 1280-81.

The Eleventh Circuit's reasoning is persuasive. By raising the statute of limitations defense now, Defendants are not attempting to pull the sort of "bait and switch" proscribed by the cases on which Kriley relies. That is to say, they are not attempting to raise new substantive grounds for denying Kriley's claim different from those raised during the administrative process. They are, instead, asserting a defense to a "judicial action," which "[o]ne would hardly expect a plan administrator" to assert "in the context of an administrative claim." Kunsman, 977 F. Supp. 2d at 262. Moreover, just as in Witt, by the time Kriley's counsel contacted the Plan Administrator in June 2016, the four-year statute of limitations had already run. The Severance Plan's consideration of Kriley's claim "cannot revive or resurrect that already time-barred claim." Witt, 772 F.3d at 1279. For all of these reasons, the Court concludes that Defendants did not waive their limitations defense by not raising it in the administrative process.

### 2. Equitable Estoppel

In opposing the Motion, Kriley argues that Defendants are estopped from asserting the statute of limitations defense because they failed to "discharge its ERISA notice and disclosure retirements." ECF No. 19 at 9. In arguing that equitable estoppel does not apply, Defendants

9

argue that Kriley had knowledge of the alleged injury - the amount of his severance - in March 2012, when he was permanently laid off. As such, Defendants point out that Kriley has failed to allege the requisite extraordinary circumstance to support equitable estoppel. ECF No. 18 at 4-5.[2]

Courts have "recognized the applicability of estoppel in ERISA cases to prevent [defendants] from relying on a statute of limitation or contractual limitation period as a defense." Gordon, 749 F.3d at 752. As the Seventh Circuit has explained, "if the defendant through representations or otherwise prevents the plaintiff from suing within the limitations period, the plaintiff may add to the remaining limitations period the entire period during which the defendant's action was effective in delaying the suit." Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 875 (7th Cir. 1997); see also Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 615 (2013) ("If the administrator's conduct causes a participant to miss the deadline for judicial review, . . . estoppel may prevent the administrator from invoking the limitations

---

[2] Defendants cite the Third Circuit's unpublished decision in Lutz v. Philips Elecs. N. Am. Corp., 347 F. App'x 773, 777 (3d Cir. 2009), to rebut Kriley's equitable estoppel argument. According to Defendants, under Lutz, "equitable estoppel cannot save Mr. Kriley's claims because the doctrine tolls the statute of limitations only until . . . the plaintiff acquires actual knowledge of his injury." ECF No. 20 at 2. The Court, however, views Lutz as inapposite. To support the proposition that "'the statute of limitations is tolled until the plaintiff knew or using reasonable diligence should have known of the claim[,]'" the court in Lutz quoted Bohus v. Beloff, 950 F.2d 919, 925–26 (3d Cir. 1991). But Bohus did not actually involve equitable estoppel. It involved the doctrine of fraudulent concealment, which, under Pennsylvania law, is a "corollary to the discovery rule" that applies when a defendant engages in affirmative misconduct that prevents a plaintiff from discovering his *injury*. Id. By contrast, equitable estoppel applies when a plaintiff, who *knows* he has been injured, "reasonably relies on the defendant's statements or conduct in *failing to bring suit*." Stitt v. Williams, 919 F.2d 516, 522 (9th Cir. 1990) (emphasis added). Thus, equitable estoppel, by its very nature, extends the statute of limitations beyond the date the plaintiff becomes aware of his injury.

provision as a defense.").[3]

Here, even if, as Kriley alleges, IBM did not furnish him with a copy of the SPD, the Court fails to see how that prevented Kriley from filing suit within the statutory limitations period. As another district court has explained when faced with a similar argument, "[t]he relevant inquiry is not whether Defendants provided legally-sufficient details on [Kriley's] potential remedies, but rather whether Defendants' representations to Plaintiff were so materially misleading as to prevent him from satisfying the statute of limitations." Ortega-Candelaria v. Johnson & Johnson, 2009 WL 2410895, at *1 (D.P.R. Aug. 4, 2009). There are no allegations of such conduct in this case. Because Kriley has not alleged that Defendants made any misrepresentations to him after he learned of his injury or otherwise lulled him into believing

---

[3] To recover benefits using an estoppel theory, a plaintiff must show "extraordinary circumstances." Rosen v. Hotel & Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery & Delaware Counties, 637 F.2d 592, 598 (3d Cir. 1981). This heightened standard is premised on a concern for actuarial soundness, which "'is, absent extraordinary circumstances[,] too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan.'" Id. (quoting Phillips v. Kennedy, 542 F.2d 52, 55 n.8 (8th Cir. 1976)). In this case, though, Kriley is not seeking to recover benefits; he is seeking to toll the statute of limitations. So it is not clear whether the heightened "extraordinary circumstances" standard should apply. To be sure, the Third Circuit has employed this standard in this context, albeit in an unpublished decision. See Kapp v. Trucking Emples. of N. Jersey Welfare Fund, Inc., 426 F. App'x 126, 130 (3d Cir. 2011). So, too, has this Court. See Ingraham v. Prudential Ins. Co. of Am., 2013 WL 1909304, at *7 (W.D. Pa. Mar. 7, 2013). But other courts "have not required heightened standards and instead have applied general estoppel principles" in cases where estoppel has been invoked to suspend the statute of limitations. LaMantia v. Voluntary Plan Adm'rs, Inc., 401 F.3d 1114, 1119 (9th Cir. 2005) (citing Hinton v. Pac. Enters., 5 F.3d 391, 39-97 (9th Cir. 1993); Bourgeois v. Pension Plan for Emp. of Santa Fe Int'l Corps., 215 F.3d 475, 481-82 (5th Cir. 2000); Ralph v. Lucent Techs., Inc., 135 F.3d 166, 171 (1st Cir. 1998); Doe, 112 F.3d at 875-77). Ultimately, the Court need not decide whether a finding of "extraordinary circumstances" is necessary in this case because, under either standard, Kriley's argument would not carry the day.

that he had an indefinite amount of time to sue,[4] there is no basis for applying equitable estoppel.

      **C.     Fiduciary Duty Claim**

In a last-ditch effort to save his suit from dismissal, Kriley argues that he "also alleged a breach of fiduciary duty, which is timely under ERISA's 6-year SOL applicable to this [claim]." ECF No. 19 at 11 (citing 29 U.S.C. § 1113(1)). In his Complaint, though, Kriley does not allege a breach of fiduciary duty claim. There is no reference to either 29 U.S.C. § 1109 or § 1132(a)(2), "which provide for a cause of action asserting breach of fiduciary duties." Swartz v. Teachers Ins. & Annuity Ass'n – Coll. Ret. Equities Fund, 2012 WL 1138603, at *7 (E.D. Pa. Mar. 30, 2012). Nor are there any allegations about how IBM breached its fiduciary duties. Kriley only pleads that he is bringing suit under "29 U.S.C. 1132(a)(1)(B), seeking payment of the twenty-six (26) weeks of pay as the severance benefit to which he was entitled . . . ." ECF No. 1-2 ¶ 1. Without any indication that Kriley originally intended to sue for breach of fiduciary duty, the Court is reluctant to allow him to amend his Complaint by way of his brief to raise this new theory in an attempt to save his otherwise untimely suit from dismissal. See Trunzo v. Citi Mortg., 2014 WL 1317577, at *13 (W.D. Pa. Mar. 31, 2014) (citations omitted) ("Plaintiffs cannot, in effect, amend their Amended Complaint via their Brief in Opposition.").

Nonetheless, even if it were properly pled, the fiduciary duty claim would still be untimely. An action for breach of fiduciary duty must be brought within "(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or

---

[4] While the Plan Administrator did inform Kriley in its denial letters that he could bring suit under ERISA, "by then the statute had already run, and so [Kriley] could not have relied on that statement to [his] detriment." Gordon, 749 F.3d at 752.

violation[,]" whichever is earlier. 29 U.S.C. § 1113. "By its terms then, ERISA's statute of limitations provision offers a choice of periods, depending on 'whether the plaintiff has actual knowledge of the breach[.]'" Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 511 (3d Cir. 2006) (quoting Kurz v. Phila. Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996)).

The crux of Kriley's claim is that IBM made "repeated assurances to treat his ATI service as IBM service[,]" and based on those assurances, he accepted IBM's offer of employment. ECF No. 1-2 ¶ 16. The alleged assurances were made when Kriley started at IBM in July 2009. *See* ECF No. 1-2 ¶¶ 13-17. Notably, Kriley has not identified any other misrepresentations after 2009 "that are independent of and not mere continuations of the initial misrepresentations that led to [his] change[] of employment." Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 203 (3d Cir. 2006). Therefore, the "date of the last action" for the purposes of § 1113(1)(A) was in July 2009 (or shortly thereafter) when the assurances were communicated to Kriley. See id. (holding under nearly identical circumstances that the "date of last action" was when the defendant "misrepresent[ed] the pension plan benefits in an attempt to persuade appellants to change employment"). Because Kriley did not file suit until November 2016, a breach of fiduciary duty claim premised on the alleged assurances would be untimely.

Kriley, however, argues that Defendants' alleged breach involved an omission and thus, under 29 U.S.C. § 1113(1)(B), the six-year limitations period did not start running until the last "date on which the [defendants] could have cured the breach[,]" which, according to Kriley, was March 2012 when he was laid off. In his view, then, he had until March 2018 to file suit. Kriley's theory does not hold water. Under Third Circuit precedent, "defendants' initial act followed by failure to inform plaintiffs that they have misunderstood their entitlements does not transform that initial act into an ongoing omission." Keen v. Lockheed Martin Corp., 486 F.

13

Supp. 2d 481, 493 (E.D. Pa. 2007) (discussing In re Unisys Corp. Ret. Med. Benefit "ERISA" Litig., 242 F.3d 497, 505 (3d Cir. 2001); Ranke, 436 F.3d at 198-203). The initial act, which occurred sometime in or around July 2009, is what counts for the purposes of triggering the statute of limitations. As a result, § 1113(1)(B) does not apply.

Assuming, for the sake of argument, that Kriley's omission theory were legally sound, he would still be out of luck because he had actual knowledge of the purported breach in March 2012, when he first learned that he would not be credited with his years of service at ATI. See Richard B. Roush, Inc. Profit Sharing Plan v. N.E. Mut. Life Ins. Co., 311 F.3d 581, 587 (3d Cir. 2002) (explaining that "actual knowledge" entails knowledge of "harm inflicted or harmful consequences"). Under Section 1131(2), Kriley would have had until March 2015 to file suit (since that date is earlier than March 2018, which is six years from when Kriley claims that IBM could have cured its prior omission). He failed to do so within that timeframe, so his purported fiduciary claim is time-barred.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that the instant claim is barred by the statute of limitations. Accordingly, Defendants' Motion for Judgment on the Pleadings, ECF No. 17, will be granted, and judgment will be entered in their favor and against Kriley.

An appropriate Order will follow.

Dated: May 10, 2017

                                      BY THE COURT:
                                      /s/ Maureen P. Kelly
                                      MAUREEN P. KELLY
                                      CHIEF UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record via CM/ECF